IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:03CV199

| | |
|---|---|
| DEBORAH JEAN INGLE, )<br>Administrator of the Estate of )<br>Christopher James Burt Ingle, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>MIKE YELTON, in his official )<br>and individual capacities; )<br>CHRIS YOUNG, in his official )<br>and individual capacities; )<br>JOE JOHNSON, in his official )<br>and individual capacities; and )<br>THE CITY OF ASHEVILLE, )<br>)<br>Defendants. )<br>_____) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's motion to compel Defendants' responses to Plaintiff's request for discovery. The parties have briefed their respective positions, and the Court received evidence and heard the arguments of counsel during the hearing held August 29, 2006. Therefore, the matter is now ripe for ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been fully set forth in a prior opinion by this Court and again by the Fourth Circuit in its remand order. ***See Ingle v. Yelton,* 345 F.Supp.2d 578 (W.D.N.C. 2004)**, ***aff'd in part, rev'd in part and remanded,* 439 F.3d 191 (4th Cir. 2006).** Therefore, the Court will defer to its prior order and the Fourth Circuit's opinion for a more detailed factual account, and only the facts and procedural history relevant to the current motion will be recited.

On July 15, 2001, Christopher Ingle was shot and killed by City of Asheville Police Department ("APD") officers following a motor vehicle pursuit which ended in a confrontation at the Holiday Inn Sunspree Resort in Asheville, North Carolina. ***Ingle,* 345 F.Supp.2d at 579-80.** On July 14, 2003, Ingle's estate filed a civil action in state court against the individual police officers who discharged their weapons during the confrontation with Ingle, as well as the City of Asheville, alleging the use of excessive force under 42 U.S.C. § 1983 as well as a number of North Carolina state law claims. ***Id.* at 580.** Defendants removed the action to this Court on August 11, 2003. ***Id.*** On November 29, 2004, this Court granted Defendants'

motion for summary judgment, finding Defendants were not civilly liable to Plaintiff on the basis of qualified immunity.  **See id. at 584.**

On December 13, 2004, Plaintiff filed a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e), alleging discovery of new evidence of a video recording depicting the confrontation between Ingle and the police officers which showed Ingle attempting to surrender before being shot.  In support of this motion, Plaintiff submitted the affidavit of Cheryl King, wife of Plaintiff's counsel, who claimed to have been shown a portion of this video by unidentified men during her investigation of the incident between the months of August and October 2004.  This Court denied Plaintiff's motion on the grounds that Plaintiff knew of and failed to disclose the alleged existence of the video recording before the Court's entry of summary judgment for Defendant.  **See Order, filed April 4, 2005.**

Plaintiff appealed the Court's judgment; the Fourth Circuit subsequently vacated this Court's grant of summary judgment and remanded the case for further discovery as to the existence of the video recording.  *Ingle*, **439 F.3d at 196-97.**  Specifically, the Fourth Circuit relied on forensic evidence which showed the window of Ingle's truck was rolled up at the time Ingle was allegedly preparing to shoot the officers on the

scene, and that such evidence contradicted the officers' statements that they feared for their life. *Id.* **at 196.** Further, the Fourth Circuit found Plaintiff's argument that the APD instituted a policy to install video recording equipment in its vehicles three months prior to the incident was of "a sufficient basis to believe such videos existed[.]" *Id.* On remand, the Fourth Circuit instructed that "[o]nce discovery related to the videotapes is completed, the district court 'may again consider [defendants'] motion for summary judgment' if it deems that to be the appropriate course." *Id.* **at 197 (citing *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)).** Accordingly, this Court directed the parties to participate in a 30-day discovery period to address the existence of the video recording and subsequently granted two enlargements of that period. The Court ordered the parties to appear for oral argument on August 29, 2006, regarding Plaintiff's motion to compel.

In this second period of discovery, Plaintiff requested all evidence maintained by the APD concerning Christopher Ingle's death, as well as all documentation related to the APD's installation of in-car video recording equipment in all its vehicles. **Exhibit 1,** *attached to* **Defendant's Response to Plaintiff's Motion to Compel.** Defendants objected to the

latter request and stated it would only disclose information regarding the APD vehicles it believed were at the scene of the incident on July 15, 2001. *Id*. Nevertheless, Defendants have been deposed by Plaintiff through Lieutenant Donald Babb regarding the documentation and policy of installing in-car video recording equipment in all APD vehicles, disclosed documentation regarding APD vehicles at the scene of the incident, and submitted 29 affidavits from 25 different law enforcement officers – all of whom assert that they do not know of nor possess any video recordings from July 15, 2001, concerning the shooting of Christopher Ingle. Despite the APD's assurances that a video recording does not exist, Plaintiff continues to believe Defendants' answers are incomplete, resulting in the motion to compel currently before the Court.

## II. DISCUSSION

Plaintiff first requested discovery of any video recordings depicting the shooting of Ingle in October 2003. **Ingle, 439 F.3d at 194.** Since that time, Plaintiff's counsel (through Ms. King) has engaged in a number of "cloak-and-dagger" encounters which lead to her firm belief that the videotape does in fact exist. However, despite having nearly three years to

track down these mysterious men, Plaintiff has failed to produce anything remotely substantial to prove the existence of the videotape.

In support of its assertion that a video recording exists, Plaintiff continues to rely solely on the testimony of Cheryl King, wife of Plaintiff's counsel. She investigated the Ingle shooting for her husband, and stated in her original affidavit that she had been contacted by unidentified men a number of times regarding the existence of this video recording. **Affidavit of Cheryl King,** *attached to* **Plaintiff's Motion to Alter or Amend Judgment, filed December 13, 2004.** Furthermore, she stated one unidentified man drove her in his vehicle through unidentified areas to a house where Ms. King viewed a portion of the recording. She asserts that she saw Ingle on the videotape, but that at the time the shooting began, an unidentified man stepped in between her and the television, blocking her view, and thus cannot testify as to what the videotape showed at that crucial moment when Ingle was shot by the officers. After this viewing, Ms. King was driven back to the location where she met the unidentified man. She admits she never asked for names or contact information from the unidentified men, nor was she able to rediscover the location where she viewed the tape, nor did she ask for a copy of the videotape.

At the hearing on this motion, Ms. King testified and continued to insist upon the existence of video recording. As in the affidavit, however, she failed to provide a specific factual basis for the existence of the video recording and merely retold her story of speaking with unidentified individuals and being taken to unidentified locations to view a portion of the alleged video recording. The reason for her lack of detail concerning potentially the most crucial piece of evidence in the case was that she "didn't take good notes." **Transcript of Proceedings held August 29, 2006, at 15.** Although Ms. King stated she generally never asks witnesses for their name, she also explained, "I think to have a real identity of somebody – you know, you can look at a picture and say this might be it, but then you want his name, you want to go to his house, you want to say, when this person comes to the door, I've been here before, you showed me the videotape." *Id.* **at 13, 35.** Despite this personal investigative strategy, Ms. King chose not to record names or details of the events and individuals involved in these interactions, even outside their presence, and she unfortunately has absolutely no way of identifying where she saw the videotape or with whom she spoke.

Were the Court to extend the discovery period yet again, it would come to the same end, that is, one party believes in, but cannot prove, the existence of a mysterious videotape. Nor would the grant of Plaintiff's motion to compel serve any purpose other than forcing Defendants to pursue a "wild goose chase" to uncover and turn over endless reams of paper. The Defendants cannot produce for the Plaintiff what they do not have, that is, there is no videotape known to or possessed by the Defendants that shows the events that happened on July 15, 2001, involving Christopher Ingle and the APD officers. Defendants, through the submission of affidavits, disclosure of documents, and deposition testimony have answered Plaintiff's questions and discovery requests over and over again. This Court has extended the discovery period twice to allow Plaintiff to continue her investigation, and after reviewing the briefs and exhibits submitted by both parties, as well as the transcript from the August 29 hearing, it is clear that Plaintiff has had adequate time to conduct discovery on the existence of the video recording and discovery efforts by all counsel have been thorough, diligent, and have left no stone unturned. Discovery regarding the existence of the video recording is now completed and Plaintiff's motion to compel will be denied. Therefore, in

accordance with the mandate from the Fourth Circuit, the Court will reinstate the Defendants' original motion for summary judgment, allow Defendants to supplement the motion if appropriate, and afford the Plaintiff an opportunity to respond thereto. ***Ingle*, 439 F.3d at 197.**

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion to compel is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is hereby **REINSTATED**, and Defendants have 15 days from entry of this Memorandum and Order to file a supplement thereto if appropriate. If Defendants choose not to file any further pleadings, they shall file a document stating their intentions.

**IT IS FURTHER ORDERED** that the Plaintiff has 15 days from service of Defendants' pleadings to file response thereto.

Signed: October 4, 2006

Lacy H. Thornburg
United States District Judge